IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON EDWARD ALBA,

    Plaintiff,

  v.

SUPERINTENDENT BRIGITTE
AMSBERRY; ASST. SUPERINTENDANT
RICHARD McGRAW; LIEUTENANT
JASON DUCHEK; SERGEANT SCOTT
BROWN; LIEUTENANT J. McLOUTH; &
OFFICERS M. KING, J. TOVAR, J. BRADY,
L. FERGUSON, K. STOCKTON, T. HART,

    Defendants.

No. 2:20-cv-00545-HZ

OPINION & ORDER

Franz Bruggemeier
Juan Chavez
PO Box 5248
Portland, OR 97208

  Attorneys for Plaintiff

1 – OPINION & ORDER

Michael R. Washington
OREGON DEPARTMENT OF JUSTICE
Trial Division
1162 Court Street NE
Salem, OR 97301

      Attorney for Defendants

HERNÁNDEZ, District Judge:

      Plaintiff Jason Edward Alba brings this § 1983 case against Defendants Superintendent Brigitte Amsberry, Assistant Superintendent Richard McGraw, Lieutenant Jason Duchek, Sergeant Scott Brown, Lieutenant J. McLouth, Officer M. King, Officer J. Tovar, Officer J. Brady, Officer L. Ferguson, Officer K. Stockton, and Officer T. Hart. Defendants move for summary judgment arguing: (1) Plaintiff cannot establish an Eighth Amendment violation against Defendants McLouth, King, Tovar, Brady, Ferguson, Stockton, and Hart; (2) Defendants Amsberry, McGraw, Duchek, and Brown cannot be held liable under a theory of *respondeat superior*; and (3) Defendants are entitled to qualified immunity. For the reasons that follow, the Court grants Defendants' motion.

## BACKGROUND

      On April 8, 2018, Plaintiff was involved in an altercation with other inmates at Eastern Oregon Correctional Institution. Duchek Decl. Exs. 1–2, ECF 17. To stop the altercation, officers sprayed Plaintiff in the head, face, and neck with oleoresin capsicum ("OC") spray, and he was taken to the Disciplinary Segregation Unit ("DSU"). Alba Decl. ¶ 4, ECF 30.

      When he arrived at the DSU, Plaintiff was placed into a small plexiglass cell for at least 40 minutes. *Id*. ¶¶ 5, 27. Plaintiff was not provided any fresh air, which made it difficult for Plaintiff to breathe. *Id.* ¶¶ 5–6. Plaintiff also felt like he was "on fire," and his eyes hurt so much he thought he "was going to go blind." *Id.* ¶ 6. But Plaintiff was not offered any way to wash or

2 – OPINION & ORDER

decontaminate his face or eyes other than a wet towel. *Id.* ¶¶ 7–8. A nurse came by to evaluate Plaintiff for injuries from the fight but did not ask him about his pain from the chemical agent or provide him with any advice on decontamination. *Id.* ¶ 10. After 45 minutes, Plaintiff was offered a shower by Defendant King. *Id.* ¶ 11.  He was provided a hot shower, which only intensified his pain. *Id.* ¶ 12. He was then placed into a DSU housing cell, where his clean clothes and bedding were contaminated with the OC spray remaining on his body. *Id.* ¶ 13. The spray on his body, clothes, and bedding caused him pain, made him cough and choke, and affected his ability to sleep for days. *Id.* ¶¶ 14–15. Days later, a second shower—provided on Plaintiff's regularly-scheduled shower day—reactivated the spray for a few more days. *Id.* ¶ 20.

Plaintiff asserts that he sought additional decontamination measures but was denied. Soon after his exposure, he asked Defendant King if he could wash his face and was told he would only get a wet towel. *Id.* ¶ 9. In the days that followed, he asked everyone he could about decontamination, including whether he should use hot or cold water and how he could decontaminate to stop the pain he was experiencing. *Id.* ¶ 16. According to Plaintiff, Defendants said that he could only get a shower and that they could not control the temperature of the water. *Id*. Plaintiff also asserts that he told each officer walking the tier multiple times about the pain he was experiencing and asked for a shower and clean clothes. Alba Decl. ¶¶ 18, 23, 28, 30, 31. According to Plaintiff, at least two of the Defendants—Officers Stockton and Brady—made statements suggesting they believed Plaintiff deserved his ongoing pain because he had been fighting and was in the DSU. *Id.* ¶ 32.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim against Defendants Scott, King, Tovar, Brady, Ferguson, Stockton, and Hart (the "Officer Defendants"), and on Plaintiff's supervisory liability claims against Defendants Amsberry, Duchek, and Brown (the "Supervisory Defendants").[1] Defendants also argue that they are entitled to qualified immunity on Plaintiff's claims. The Court addresses each in turn.

## I.   Deliberate Indifference

A prison official violates an inmate's Eighth Amendment rights if they are "deliberately indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted)

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133

---

[1] Plaintiff concedes that he does not have enough evidence to support his claims against Defendants McGraw and McLouth. Accordingly, Defendants McGraw and McLouth are dismissed from this case.

5 – OPINION & ORDER

(9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "[m]ere negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

Here, the Officer Defendants were not deliberately indifferent to Plaintiff's medical needs in the period immediately following his exposure to OC spray. As Defendants point out, Plaintiff was provided a wet towel, observed for 30 minutes by Defendant King, examined by a nurse, and provided a shower in the hour after he was sprayed. Duchek Decl. ¶ 5. Though Plaintiff alleges discomfort during this one-hour period, the actions of the Officer Defendants do not arise to an Eighth Amendment violation. *Cf. Clement*, 298 F.3d at 905 (finding a four-hour delay of medical attention and showers after secondary exposure to OC spray could amount to deliberate indifference under the Eighth Amendment); *Perez v. Nooth*, No. 2:18-cv-01244-HZ, 2020 WL 3037214, * 5 (D. Or. June 5, 2020) (finding a reasonable jury could conclude the defendants were deliberately indifferent where the plaintiff waited at least an hour for a shower and there was evidence that another inmate who had "minimum contact with OC spray" was offered and refused a shower forty minutes earlier).

After his hot shower, however, the Officer Defendants' actions may have been constitutionally deficient. Plaintiff submits evidence that the temperature of the shower

6 – OPINION & ORDER

exacerbated his pain. Alba Decl. ¶¶ 11, 12. As a result, Plaintiff suffered from significant discomfort while in his DSU cell. *Id.* ¶¶ 12–15 (declaring that he could not adequately wash because of the water temperature so his linens and clothing were contaminated by the spray remaining on his body). He repeatedly requested additional decontamination and was denied until his next regularly-scheduled shower day a few days later. *Id.* ¶¶ 16, 18, 20, 23, 28, 30, 31. And Plaintiff alleges that each of the Officer Defendants was personally involved. Plaintiff asked each of the Officer Defendants for additional decontamination when they walked by his cell. *Id.* Taken in the light most favorable to Plaintiff, a reasonable jury could conclude that the Officer Defendants were aware of Plaintiff's risk of harm and yet failed to provide Plaintiff with adequate decontamination. Accordingly, Defendants may be liable for deliberate indifference.

## II.     Supervisory Liability

"[F]or a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)).  Thus, "'[a] supervisor can be liable in his individual capacity for his

own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (internal citations and quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

The evidence does not demonstrate that the Supervisory Defendants are liable. Plaintiff submits evidence that Defendant Amsberry knew or should have known that hot showers can exacerbate OC resin on skin. Bruggemeier Decl. Ex. 2 (2016 email to ODOC superintendents), ECF 31. Plaintiff also declares that Defendant Amsberry as the Superintendent "runs everything in the prison and is responsible for making or approving policies and making sure the prison follows the laws and the OARs." Alba Decl. ¶ 25. But aside from Plaintiff's own declaration, there is no evidence in the record as to the responsibilities or authority of Defendant Amsberry in her role as the Superintendent of EOCI. Similarly, Plaintiff submits no evidence as to the responsibilities or authority of Defendant Duchek other than broad assertions that he "ran the DSU," "made sure the policies are followed," and "was the top of DSU chain." *Id.* ¶ 26. Without evidence as to the responsibilities of these Defendants, no reasonable jury could find that Defendant Ducheck and Amsberry's actions, inactions, or acquiescence to a policy could be the moving force behind Plaintiff's injury. Accordingly, the claim against Defendants Ducheck and Amsberry are dismissed.

There are allegations that Defendant Brown was personally involved in the underlying incident, but his individual actions did not violate the Eighth Amendment. Plaintiff alleges that Defendant Brown instructed officers to give the inmates cold rags and showers when they arrived in the DSU, and he directed an officer to put Plaintiff in the small plexiglass enclosure in the hour after he was sprayed. Alba Decl. ¶ 27. As stated above, however, these facts do not arise to an Eighth Amendment violation. Accordingly, summary judgment is also granted as to the claim against Defendant Brown.

### III.   Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When analyzing a qualified-immunity question, the court applies a two-step process. First, a court "must decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right." *Id*. at 232. "Second . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts have discretion regarding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Courts "'do not require a case directly on point'" to defeat a claim of qualified immunity, "'but existing precedent must

have placed the statutory or constitutional question beyond debate.'" *Id*. (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)); *see also Greisen v. Hanken*, 925 F.3d 1097, 1108–09 (9th Cir. 2019). In conducting this analysis, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al–Kidd*, 563 U.S. at 742). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).

In *Garcia v. Pope*, the district court was presented with a similar Eighth Amendment claim. Case No. 2:18-cv-01573-MC, 2020 WL 1068239, at *2 (D. Or. March 5, 2020), *aff'd* 841 F.App'x 28 (9th Cir. March 25, 2021). There, the plaintiff alleged that the defendants were deliberately indifferent to the plaintiff's health and safety when they exposed him to a warm-water decontamination shower. *Id.* at *1. The defendants argued that qualified immunity defeated the plaintiff's claim, and the court agreed, finding that "no controlling or even persuasive authority has held that warm-water decontamination showers constitute deliberate indifference." *Id.* at *2. The court further noted that "most courts addressing this issue have rejected claims of deliberate indifference arising from a warm or hot decontamination shower." *Id.* (citing cases from the Southern District of New York, Southern District of Ohio, District of Maryland, Western District of Virginia, Central District of California, Eastern District of Virginia, Eastern District of North Carolina, and the Southern District of California). And "[i]n the few cases denying qualified immunity, the inmates were subjected to additional conditions that exacerbated their pain and discomfort." *Id.* at *3 (citing cases from the Southern District of West Virginia and the Eastern District of California where the plaintiff was subjected to "excessively hot water" and was denied medical assistance or moved to solitary confinement

without fresh clothing or bedding). Because the plaintiff in *Garcia* "[did] not allege any disregard to his health or safety aside from the warm shower," was provided other methods of decontamination, and was not forced to take a shower, the court concluded that "it was not clearly established that [the] plaintiff's Eighth Amendment rights would be violated by exposure to a warm decontamination shower." *Id.* at *3.

Here, too, Plaintiff's claims are barred by qualified immunity. Like the plaintiff in *Garcia*, the crux of Plaintiff's Eighth Amendment claim relates to the hot temperature of the shower. As noted above, the allegations stemming from the hour-long period before his shower do not amount to an Eighth Amendment violation. And Plaintiff's discomfort after his shower is the direct result of the hot shower. At the time of this incident, it was not clearly established that Plaintiff's Eighth Amendment rights would be violated by exposure to a hot or warm decontamination shower or by the failure to provide a second shower for further decontamination. In other words, a reasonable officer would not have known that he was violating the Eighth Amendment in providing Plaintiff with a hot shower or failing to provide him with a second shower. Because the claims related to the hot-water shower are the sole deliberate indifference claims remaining in this case, the Court finds that Defendants are entitled to summary judgment and this case is dismissed.

///
///
///
///
///
///

11 – OPINION & ORDER

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment [66]. This case is dismissed.

IT IS SO ORDERED.

DATED: __October 29, 2021__.

MARCO A. HERNÁNDEZ
United States District Judge

12 – OPINION & ORDER